CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 13 2014

JULIA A. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PAMELA E. CARRICO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Civil Action No. 7:13CV00145<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Glen E. Conrad<br>Chief United States District Judge |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to establish entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Pamela Elizabeth Carrico, was born on February 15, 1962, and eventually completed her high school education. Mrs. Carrico has also received training as a nursing assistant. Plaintiff worked for many years as a nursing assistant, or CNA. She last worked in 2010. On December 29, 2010, Mrs. Carrico filed applications for disability insurance benefits and supplemental security income benefits. Plaintiff alleged that she became disabled for all forms of

substantial gainful employment on February 10, 2010 due to diabetes and heart disease. She now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Mrs. Carrico met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally, 42 U.S.C. §§ 416(i) and 423(a).

Mrs. Carrico's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated September 26, 2012, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Mrs. Carrico suffers from several severe impairments, including coronary artery disease, diabetes, anxiety-related disorder, and a major depressive disorder. (TR 19). Because of these conditions, the Law Judge ruled that plaintiff is disabled for her past relevant work role. However, the Law Judge found that Mrs. Carrico retains sufficient functional capacity for light work activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only occasionally operate foot controls with either foot due to mild edema; she can never climb ladders/ropes/scaffolds or crawl; she can only occasionally use ramps, climb stairs, balance, kneel, crouch, or stoop/bend; she should avoid concentrated exposure to vibration and hazards (machinery, heights, etc.); she can only perform simple, easy-to-learn, repetitive unskilled work activity; she should not perform work requiring high production quotas or strict time demands for production (low stress jobs); and she should have only occasional interaction with the public.

(TR 23). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that Mrs. Carrico retains sufficient capacity to perform several specific light work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that

2

Mrs. Carrico is not disabled, and that she is not entitled to benefits under either federal program. See generally, 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Carrico has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. It seems that Mrs. Carrico suffered a myocardial infarction in April of 2009. In subsequent testing, it was determined that she had developed a total occlusion of the left circumflex coronary artery. She was also found to be suffering from inadequately controlled diabetes, hypertension, lipid disorder, and gastroesophageal reflux disease. After the cardiac incident, her condition stabilized, though she continued to experience anginal symptoms. Diagnostic testing revealed no ischemia. Her doctors treated her condition conservatively, with various medications. Over a period of time, her chest pain decreased in incidence and severity. In June of 2010, plaintiff was treated for low back pain, and it was determined that she was experiencing early degenerative arthritis.

In April of 2011, plaintiff sought treatment for depression and anxiety. Dr. Donna Rigolizzo, a psychiatrist, eventually diagnosed major depression of moderate severity. Dr. Rigolizzo assigned a Global Assessment of Functioning (GAF) of 50,[1] and she prescribed appropriate medications. On November 1, 2011, Mrs. Carrico noted improvement in her emotional symptoms. Dr. Rigolizzo reported that the major depressive disorder was improved, but not yet in remission. The psychiatrist described further improvement in early 2012. On April 10, 2012, Dr. Rigolizzo completed a medical assessment of plaintiff's mental ability for work-related activities. The psychiatrist reported serious impairment in plaintiff's capacity to deal with the public, deal with work stresses, function independently, and maintain attention/ concentration. (TR 489). Otherwise, Dr. Rigolizzo noted satisfactory ability to function.

Following new complaints of chest pain, Mrs. Carrico underwent a diagnostic evaluation in August of 2012. She was found to be suffering from compromised left ventricular function. Her doctors prescribed medication to control her hypertension, and improve cardiovascular efficiency.

In summary, Mrs. Carrico experiences significant problems associated with coronary artery disease, hypertension, diabetes, and depressive disorder. While her hypertension and diabetes are not consistently controlled, her doctors have suggested that these problems are subject to conservative, remedial therapy. No doctor has recommended invasive treatment measures. Moreover, no doctor has suggested that plaintiff's physical problems are disabling in overall severity, or that her recurrent chest pain would prevent performance of lighter levels of work activity. While

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

Mrs. Carrico also suffers from depression and anxiety, her psychiatrist has reported good response to pharmacological treatment. Although the psychiatrist opined that Mrs. Carrico still suffers from some work-related limitation of function, Dr. Rigolizzo's assessments cannot be read so as to suggest total disability for all forms of work activity.

Based on the existing medical record, the court finds substantial evidence to support the Law Judge's determination that Mrs. Carrico retains sufficient functional capacity to engage in a limited range of light work activity. Once again, there is simply no evidence to suggest that plaintiff's cardiovascular problems and diabetes are so severe and intractable as to prevent performance of lighter forms of work activity. While the Law Judge recognized that plaintiff's nonexertional impairments do result in vocational limitations, the court believes that the evidence supports the Law Judge's finding that Mrs. Carrico could still be expected to perform work not involving production quotas, stressful activity, or extensive with the public. At the time of the administrative hearing, the Law Judge propounded the following hypothetical question to a vocational expert:

> I'll give you a little bit different hypothetical. I want you to assume a hypothetical individual the same age, education, past work experience as the claimant who has the following residual functional capacity. This individual can occasionally lift and/or carry, including upward pulling, up to 20 pounds, frequently lift and/or carry, including upward pulling, up to ten pounds. This individual can stand and/or walk with normal breaks for a total of about six hours out of an eight-hour day. This individual can only occasionally use her lower extremities for pushing or pulling using the operation of foot controls. This individual can occasionally climb ramps, stairs, should never climb ladders, ropes or scaffolds and occasionally balance, kneel, crouch, should never crawl, can occasionally stoop or bend. This individual should avoid work with concentrated exposure to vibrations and hazards such as dangerous moving machinery and unprotected heights. Due to mental limitations, this individual is limited to simple, easy-to-learn, repetitive, unskilled work activity. This individual requires low stress work, which I am going to define as work not requiring high production quotas or strict high demands for production. Also, this individual has moderate limitation in the ability to deal with the public, which I'm going to define as can only occasionally interact with the public.

(TR 622-23).

In response, the vocational expert identified several specific light work roles in which Mrs. Carrico could be expected to perform. It appears to the court that the vocational expert's evaluation of the vocational factors, and the assumptions under which the expert deliberated, are both reasonable and consistent with the evidence of record. The court believes that the Law Judge properly relied on the vocational expert's testimony in finding that Mrs. Carrico remains capable of performing several specific work roles existing in the national economy. Thus, the court concludes that the Law Judge's opinion in this case is supported by substantial evidence. It follows that the final decision of the Commissioner must be affirmed.

On appeal to this court, Mrs. Carrico argues that the Law Judge failed to accord proper weight to the residual functional capacity assessment of the treating psychiatrist, Dr. Rigolizzo. As previously noted, the psychiatrist noted serious limitations in plaintiff's capacity to deal with the public, deal with work stresses, function independently, and maintain attention/concentration. It is true that the Law Judge specifically accorded "limited weight" to Dr. Rigolizzo's opinion, primarily because plaintiff's course of mental health treatment reflects steady improvement. (TR 26). In any event, the court believes that the Law Judge adequately accounted for the limitations noted by Dr. Rigolizzo in the hypothetical put to the vocational expert. When asked to consider the synergistic effect of all of plaintiff's impairments and limitations, the vocational expert identified several jobs which Mrs. Carrico could still be expected to perform. Accordingly, the court finds no error in the Law Judge's treatment of the mental health evidence, or in the Law Judge's evaluation of the report and opinion of the treating psychiatrist.

In affirming the final decision of the Commissioner, the court does not suggest that Mrs. Carrico is free of all pain, discomfort, anxiety, and depression. Indeed, the medical record confirms that plaintiff suffers from several serious problems which can be expected to result in many subjective complaints, as described by Mrs. Carrico in her testimony. However, it must again be noted that no doctor has suggested that plaintiff's physical problems are so severe as to result in totally disabling subjective manifestations. Indeed, the medical record reflects that, when properly treated, plaintiff has experienced some improvement in her symptomatology. It must be recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). It appears to the court that the Administrative Law Judge considered all of the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claims for benefits. Indeed, the court believes that the Law Judge gave Mrs. Carrico the benefit of the doubt in assessing her residual functional capacity. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 13th day of May, 2014.

*/s/ Glen Conrad*
Chief United States District Judge

7